LAW OFFICES OF DALE K. GALIPO
  Dale K. Galipo (Bar No. 144074)
  dalekgalipo@yahoo.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California  91367
Telephone:     (818) 347-3333
Facsimile:     (818) 347-4118

Brian Edward Claypool
The Claypool Law Firm
Attorneys at Law
633 W. Fifth Street, Suite 5880
Los Angeles, CA  90071
Tel: (213) 488-2042
Fax: (213) 489-4798
E-Mail: becesq@aol.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELINE ALFORD,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>HUMBOLDT COUNTY, GARY PHILP, CITY OF EUREKA, CHIEF GARR NIELSEN, and DOES 1 to 10, inclusive,<br><br>　　　　Defendants. | Case No. C 09-01306-CW<br><br>**JOINT STIPULATION AND [PROPOSED] ORDER GRANTING LEAVE TO FILE FIRST AMENDED COMPLAINT**<br><br>[Proposed] First Amended Complaint *filed concurrently herewith* |

　　　IT IS HEREBY STIPULATED BY AND BETWEEN Plaintiff JACQUELINE ALFORD and Defendants HUMBOLDT COUNTY, GARY PHILP, CITY OF EUREKA and CHIEF GARR NIELSEN, through their respective attorneys of record, as follows:

　　　(1)　That an order may enter allowing plaintiff to file the attached First Amended Complaint; and

　　　(2)　That defendants shall file their responsive pleading within twenty (20) days

/ / /

/ / /

1  after service of any newly named defendant.

2      Counsel for Plaintiff hereby attests pursuant to General Order 45 that counsel for

3  Defendants has concurred in the filing of this document bearing her electronic signature.

4  DATED:  September 24, 2009    LAW OFFICES OF DALE K. GALIPO

6  By: __/S/_____
    DALE K. GALIPO
7      Attorney for Plaintiff Jacqueline Alford

8  DATED:  September 24, 2009    MITCHELL, BRISSO, DELANEY & VRIEZE

10  By: __/S/_____
11      NANCY K. DELANEY
    Attorneys for Defendants Humboldt
12      County, Gary Philp, City of Eureka, Chief
13      Garr Nielsen

15  **PURSUANT TO STIPULATION, IT IS SO ORDERED.**

17  Dated: ___10/1/09_____    _____
18      Honorable Claudia Wilken
    United States District Judge

BRIAN E. CLAYPOOL, SBN 134674
THE CLAYPOOL LAW FIRM
1055 E. Colorado Blvd., 5th Floor
Pasadena, California 91106
becesq@aol.com
Telephone:   (626) 240-4616
Facsimile:   (626) 240-4617

LAW OFFICES OF DALE K. GALIPO
  Dale K. Galipo, Esq. (Bar No. 144074)
   dalekgalipo@yahoo.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California  91367
Telephone:   (818) 347-3333
Facsimile:    (818) 347-4118

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELINE ALFORD,<br><br>         Plaintiff,<br><br>    vs.<br><br>HUMBOLDT COUNTY, GARY PHILP, CITY OF EUREKA, CHIEF GARR NIELSEN, DEPUTY GREG BERRY, LIEUTENANT GEORGE CAVINTA, SERGEANT WILLIAM NOVA, SERGEANT BRYAN QUENELL, DEPUTY JAMIE BARNEY, LIEUTENANT DAVE MOREY, DETECTIVE RICH SCHLESIGER, and DOES 1 to 10, inclusive,<br><br>         Defendants. | Case No. CV 09-01306 CW<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Violations of Fourth Amendment (42 U.S.C. § 1983)<br>2. Violations of Fourteenth Amendment (42 U.S.C. § 1983)<br>3. Conspiracy to Violate Civil Rights (42 U.S.C. §§ 1983 and 1985)<br>4. Conspiracy to Cover-Up (42 U.S.C. § 1983)<br>5. Municipal Liability for Unconstitutional Custom, Practice, or Policy (42 U.S.C. § 1983)<br><br>**DEMAND FOR JURY TRIAL** |

### **FIRST AMENDED COMPLAINT**

COMES NOW, plaintiff JACQUELINE ALFORD, and alleges as follows:

## VENUE AND JURISDICTION

1. Venue is proper in this district because the underlying act, omissions, injuries and related facts and circumstances giving rise to the present action occurred in this District.

2. This Court has jurisdiction over plaintiffs federal claims under 42 U.S.C. § 1983 pursuant to 28 U.S.C. §§ 1331 and 1343.

## PARTIES

3. Plaintiff JACQUELINE ALFORD is the decedent's mother. Plaintiff brings this action individually and as heir and successor in interest to PETER STEWART (or "decedent") under C.C.P. Sections 377.11, 377.30, and 377.60. Plaintiff brings suit for violations of the decedent's constitutional rights, and for violations of plaintiff's constitutional rights.

4. At all times mentioned herein, decedent PETER STEWART was a resident of the City of Eureka, Humboldt County, State of California.

5. At all times mentioned herein, plaintiff JACQUELINE ALFORD resided in Humboldt County, State of California.

6. Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, defendants, and each of them, were and now are residents of the Humboldt County, State of California.

7. At all times herein mentioned, defendant, CITY OF EUREKA (hereinafter "CITY") is and was at all relevant times mentioned herein, a municipality duly organized and existing under the laws of the State of California. The City of Eureka Police Department (hereinafter "EPD") is an official subdivision of defendant CITY, and all officers employed by said department are employees of defendant CITY.

8. Defendant CITY was at all times mentioned herein, engaged in owning, operating, maintaining, managing and doing business as a Police Department in the

City of Eureka, State of California. All of the acts complained of herein by plaintiff against defendants were done and performed by said defendants by and through its authorized agents, servants and/or employees, and each of them, all of whom at all relevant times herein were acting within the course, purpose and scope of said agency, service and/or employment capacity. Moreover, defendants and its agents ratified all of the acts complained of herein.

9. At all times herein mentioned, defendant, HUMBOLDT COUNTY (hereinafter "COUNTY") is and was at all relevant times mentioned herein, a municipality duly organized and existing under the laws of the State of California. The Humboldt County Sheriff's Department (hereinafter "HCSD.") is an official subdivision of defendant COUNTY, and all officers employed by said department are employees of defendant COUNTY.

10. Defendant COUNTY was at all times mentioned herein, engaged in owning, operating, maintaining, managing and doing business as a Humboldt County Sheriff's Department in the County of Humboldt, City of Eureka, State of California. All of the acts complained of herein by plaintiff against defendants were done and performed by said defendants by and through its authorized agents, servants and/or employees, and each of them, all of whom at all relevant times herein were acting within the course, purpose and scope of said agency, service and/or employment capacity. Moreover, defendants and its agents ratified all of the acts complained of herein.

11. The true names and capacities, whether individual, corporate, association or otherwise of defendants DOES 1 through 10, inclusive, are unknown to plaintiff who otherwise sues these defendants by such fictitious names. Each defendant is sued individually and/or in his/her official capacity as defined in the present complaint. Plaintiff will seek leave to amend this complaint to show the true names and capacity of these defendants when they have been ascertained. Each of

1  the fictiously named defendants is responsible in some manner for the conduct or
2  liabilities alleged herein.

3      12.   All defendants who are natural persons, and each of them, including
4  DOES 1 through 10, are sued individually and/or in their official capacity as
5  officers, sergeants, captains, commanders, supervisors and/or civilian employees,
6  agents, policy makers, and representatives for the EPD, a department and
7  subdivision of defendant CITY.

8      13.   All defendants who are natural persons, and each of them, including
9  DOES 1 through 10, are sued individually and/or in their official capacity as
10 officers, sergeants, captains, commanders, supervisors and/or civilian employees,
11 agents, policy makers, and representatives for the HCSD, a department and
12 subdivision of defendant COUNTY.

13     14.   Defendant GARR NIELSEN (hereinafter "NIELSEN") was at an
14 relevant times herein the Chief of the EPD, and he, along with other officials of
15 CITY and DOES 8-10, at all times possessed the power and the authority and were
16 charged by law with the responsibility to enact policies and to prescribe rules and
17 practices concerning the operation of the EPD and/or were supervisors of the
18 defendant-officers.

19     15.   Defendant GARY PHILP (hereinafter "PHILP") was at all relevant
20 times herein the Chief of the HCSD, and he, along with other officials of COUNTY
21 and DOES 8-10, at all times possessed the power and the authority and were
22 charged by law with the responsibility to enact policies and to prescribe rules and
23 practices concerning the operation of the HCSD and/or were supervisors of the
24 defendant-officers.

25     16.   Defendants DEPUTY GREG BERRY ("BERRY"), LIEUTENANT
26 GEORGE CAVINTA ("CAVINTA"), SERGEANT WILLIAM NOVA ("NOVA"),
27 SERGEANT BRYAN QUENELL ("QUENELL"), DEPUTY JAMIE BARNEY
28 ("BARNEY"), LIEUTENANT DAVE MOREY ("MOREY"), DETECTIVE RICH

SCHLESIGER ("SCHLESIGER"), and DOES 1-10, are officers, sergeants, lieutenants, who were at the time of committing the acts alleged hereinafter, duly authorized employees of defendant CITY and/or COUNTY, who were acting within the course and scope of their respective duties and with the complete authority and ratification of defendant CITY and/or COUNTY.  At all relevant times herein, said defendants, and each of them, were acting under color of law, to wit: under the color of the statutes, ordinances, regulations, policies, customs and usages of defendant CITY and/or COUNTY.

17. At all times herein mentioned, all defendants, were and are duly appointed officers, agents, and/or employees of defendant CITY and/or COUNTY.

18. At all times herein, each and every defendant was the agent of each and every other defendant and had the legal duty to oversee and supervise the hiring, conduct, employment, and discipline of each and every defendant named and unnamed in this complaint.

19. In doing the acts and in failing or omitting to act as hereafter described, defendants were acting with the implied and actual permission and consent of defendant CITY and/or COUNTY.

20. Peter Stewart died as a direct and proximate result of the actions of all defendants.

## FACTUAL ALLEGATIONS

21. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 20 of this Complaint with the same force and effect as if fully set forth herein.

22. On or about June 3, 2007, decedent Peter Stewart went to the residence of Debra Brown and Matthew Moore in seek of help while suffering from an acute psychiatric emergency.  Mr. Stewart, who was of Native-American origin, had recently been released from a residential mental health treatment center.

1    23.   Plaintiff sought the assistance of that Tribal Police Officer Mike
2 Roberts, who had experience with transporting Mr. Stewart to the mental health
3 facility during prior psychiatric emergencies and with whom Mr. Stewart was
4 comfortable and familiar, in obtaining treatment for Mr. Stewart.  Defendant
5 BERRY assured Plaintiff that Officer Roberts would respond to Mr. Stewart's
6 location with a similarly familiar ambulance driver to transport Mr. Stewart to a
7 mental health facility for treatment.

8    24.   However, BERRY instead took it upon himself to illegally enter Ms.
9 Brown's property under the auspices of a welfare check.  BERRY sped down the
10 driveway of Ms. Brown's residence with lights and sirens on and yelled over their
11 patrol car's P.A. system at Mr. Stewart.  Ms. Brown did not give consent to BERRY
12 to enter her property, and they had no information on which to believe that a crime
13 had been committed.

14    25.   Mr. Stewart, who obviously was shocked and frightened by the manner
15 in which BERRY had arrived, removed a butter knife from his pocket and asked
16 BERRY to leave him alone.

17    26.   BERRY took out his TASER, then took out his gun and pointed it at
18 Mr. Stewart from some distance, causing Mr. Stewart to retreat into the residence.  It
19 was clear to a reasonable officer that Mr. Stewart was suffering from an acute
20 mental illness such that he did not understand what was happening, why the police
21 were coming for him, or the nature and quality of his own uncontrollable actions.

22    27.   Instead of telling Mr. Stewart that the police were not there to hurt him,
23 as it no doubt appeared to him, and instead of trying to obtain psychiatric treatment
24 for him and inform him of the same, BERRY, in conjunction with PHILP,
25 NIELSEN, CAVINTA, NOVA, QUENELL, and others, mobilized several SWAT
26 teams and adopted policies, practices, procedures, and rules of engagement that
27 ensured that the only outcome would be the death of Mr. Stewart.

28

28. On information and belief, a responding officer accidentally discharged his gun, prompting other responding officers to fire several rounds into the residence.

29. On the next day, June 4, 2007, Defendants caused between 50 and 100 tear gas canisters to be shot at the residence.

30. Defendants knew that there were several substantial fire risks inside the residence, including a wood-burning stove, fire wood, a cigarette lighter, live ammunition, a gas stove, a propane tank, and newspapers.

31. Shortly thereafter, at the direction of PHILP, NIELSEN, CAVINTA, and NOVA, QUENELL led a team of deputies, including BARNEY, up to the residence to break out more windows and throw hand grenades into the residence which defendants knew posed a substantial risk of starting a fire.

32. Defendants also knew that the broken windows created a wind-tunnel effect which provided more than enough oxygen to fuel any potential fire. Defendants also knew there was a chance that C-4 explosives belonging to Mr. Moore were inside the residence.

33. During the team's second approach to the residence, BARNEY, at the direction of QUENELL as well as PHILP, NIELSEN, CAVINTA, and NOVA, threw in a hand grenade which immediately started a fire inside the residence.

34. No later than 2:36 p.m., defendants knew that the residence was on fire.

35. Although fire personnel were on scene, defendants prevented them from attempting to rescue Mr. Stewart or even attempting to put out the fire until they circumvented defendants and went in to put out the fire at 3:51 p.m. On information and belief, if Defendants had not obstructed their efforts for over an hour, then fire personnel would have rapidly extinguished the fire and Mr. Stewart's death would have been prevented.

36. At approximately 4:16 p.m., Mr. Stewart's unclad body was found in a bathroom. He had placed wet towels under the door sill and around his body.

37. Defendants proceeded to cover-up the true circumstances leading up to Mr. Stewart's death by refusing to allow other agencies to take part in the homicide and fire investigations, and by refusing to provide fire investigators with materials they requested and needed to determine the cause of the fire.

# FIRST CLAIM FOR RELIEF

## Violations of the Fourth Amendment (42 U.S.C. § 1983)

(Against All Defendants Except COUNTY and CITY)

38. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 37 of this Complaint with the same force and effect as if fully set forth herein.

39. On June 3, 2007, BERRY entered Ms. Berry's property without a warrant, probable cause, exigent circumstances, or consent, and detained and arrested the decedent without probable cause or reasonable suspicion that a crime was committed. BERRY used excessive force against the decedent by pointing his gun at decedent when decedent was merely suffering from a psychiatric emergency and posed no threat to BERRY or anyone else.

40. On June 4, 2007, the deployment of several SWAT teams by defendants was an unreasonable search and seizure. Defendants' use of tear gas and hand grenades was unreasonable and excessive under the circumstances. Defendants' obstruction of fire personnel also was unreasonable and excessive under the circumstances.

41. Plaintiff alleges that all of the defendants were integral participants to the conduct that gives rise to decedent's Fourth Amendment violations based on their actions, omissions, failed to intervene to prevent the constitutional violations against the decedent, and/or contributed in some manner to the conduct that led to decedent's injuries and death.

42. As a result, decedent suffered extreme pain and suffering and eventually lost his life. Plaintiff also has been deprived of the life-long love, comfort, support, society, care, and sustenance of Decedent, and will continue to be so deprived for the remainder of her natural life. Plaintiff also claims funeral and burial expenses and a loss of financial support.

43. The conduct of defendants was willful, wanton, malicious and done with an evil motive and intent and a reckless disregard for the rights and safety of Decedent and Plaintiff and therefore warrants the imposition of exemplary and punitive damages.

44. Plaintiff seeks both wrongful death and survival damages under this claim.

## SECOND CLAIM FOR RELIEF

**Violations of the Fourteenth Amendment (42 U.S.C. § 1983)**

(Against All Defendants Except COUNTY and CITY)

45. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 44 of this Complaint with the same force and effect as if fully set forth herein.

46. Plaintiff and decedent had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprives them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to, unwarranted state interference in Plaintiff's familial relationship with her son, Decedent, and unwarranted state interference with Decedent's own life and liberty. Decedent also had a right under the Fourteenth Amendment to be free from deliberate indifference to his serious medical needs while his liberty was restricted by defendants.

47. Defendants knew that decedent faced a serious medical need and safety risk, including without limitation, an acute psychiatric emergency, fire, smoke

inhalation, and heat exposure, but failed to take reasonable measures to obtain emergency services for him.

48. As a result of the unjustified use of excessive force and deliberate indifference by defendants, decedent died. Plaintiff was thereby deprived of her constitutional right and familial relationship with her son, decedent.

49. The aforementioned actions of defendants, along with other undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of decedent and Plaintiff, and with purpose to harm unrelated to any legitimate law enforcement objective.

50. Plaintiff alleges that all of the defendants were integral participants to the conduct that gives rise to these Fourteenth Amendment violations based on their actions, omissions, failed to intervene to prevent the constitutional violations against the decedent, and/or contributed in some manner to the conduct that led to decedent's injuries and death.

51. As a direct and proximate cause of the acts of defendants, decedent suffered extreme pain and suffering and eventually lost his life. Plaintiff suffered extreme and severe mental anguish and pain and has been injured in mind and body. Plaintiff has also been deprived of the life-long love, comfort, support, society, care and sustenance of decedent, and will continue to be so deprived for the remainder of her natural life. Plaintiff also claims funeral and burial expenses and a loss of financial support.

52. The conduct of defendants was willful, wanton, malicious and done with an evil motive and intent and a reckless disregard for the rights and safety of decedent and Plaintiff and therefore warrants the imposition of exemplary and punitive damages.

## THIRD CLAIM FOR RELIEF

**Conspiracy to Violate Civil Rights (42 U.S.C. §§ 1983 and 1985)**

(Against All Defendants Except COUNTY and CITY)

53. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 52 of this Complaint with the same force and effect as if fully set forth herein.

54. Before or during the course of this incident, Defendants conspired to and in fact did deprive Decedent and Plaintiff of their aforementioned rights under the United States Constitution.

55. All rights of Decedent and Plaintiff, as set forth, were violated by Defendants by their wrongful detention and arrest, uses of excessive force, denials of medical care, unreasonable searches, and conscience-shocking actions, as more specifically set forth.

56. On information and belief, Defendants conspired to and in fact did deprive Plaintiff and Decedent of their right to equal protection of the laws and equal privileges and immunities under the laws because of their Native-American race and origin.

57. On information and belief, Defendants agreed and conspired, and shared the same conspiratorial objective with each other to violate the aforementioned constitutional rights of Decedent and Plaintiff.

58. The conduct of Defendants was willful, wanton, malicious and done with an evil motive and intent and a reckless disregard for the rights and safety of Decedent and Plaintiffs and therefore warrants the imposition of exemplary and punitive damages.

59. Plaintiff seeks both wrongful death and survival damages under this claim.

## FOURTH CLAIM FOR RELIEF

### Conspiracy to Cover-Up (42 U.S.C. § 1983)

(Against All Defendants Except COUNTY and CITY)

60. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 59 of this Complaint with the same force and effect as if fully set forth herein.

61. On information and belief, Defendants conspired to and in fact did deprive Plaintiff and Decedent of their right to access to the courts under the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

62. As a result, Plaintiff was forced to incur costs and expenses of investigating and prosecuting their claims, and any inability to recover on their claims will be a direct result of the actions of Defendants in covering-up their violations of Decedent's and Plaintiff's constitutional rights.

63. On information and belief, Defendants conspired to and in fact did deprive Plaintiff and Decedent of their right to equal protection of the laws and equal privileges and immunities under the laws because of their Native-American race and origin.

64. On information and belief, Defendants agreed and conspired, and shared the same conspiratorial objective with each other to violate the aforementioned constitutional rights of Decedent and Plaintiff.

65. Decedent and Plaintiff were deprived of their constitutional rights, and were injured in their person and property as a result of the conspiracy.

66. The conduct of Defendants was willful, wanton, malicious and done with an evil motive and intent and a reckless disregard for the rights and safety of Decedent and Plaintiff and therefore warrants the imposition of exemplary and punitive damages.

67. Plaintiff seeks both wrongful death and survival damages under this claim.

## FIFTH CLAIM FOR RELIEF

**Municipal Liability for Unconstitutional Custom or Policy (42 U.S.C. § 1983)**

(Against Defendants COUNTY, CITY, PHILP, NIELSEN, CAVINTA, NOVA, MOREY, QUENELL, SCHLESIGER, and DOES 8 to 10)

68. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 67 of this Complaint with the same force and effect as if fully set forth herein.

69. On and for some time prior to June 3, 2007 (and continuing to the present date), defendants deprived Plaintiff and decedent of the rights and liberties secured to then by the Fourth and Fourteenth Amendments to the United States Constitution, in that said defendants and their supervising and managerial employees, agents, and representatives, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, and of Plaintiff and decedent, and of persons in their class, situation and comparable position in particular, knowingly maintained, enforced and applied an official recognized custom, policy, and practice of:

(a) Employing and retaining as law enforcement personnel, including the individual defendants herein, who defendants at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating citizens by failing to follow written CITY and COUNTY policies;

(b) Of inadequately supervising, training, controlling, assigning, and disciplining CITY and COUNTY law enforcement officers, and other CITY and COUNTY personnel, including the individual defendants herein, who defendants each knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits;

  (c) By maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling the intentional misconduct by the individual defendants herein, who are CITY and COUNTY law enforcement personnel;

  (d) By failing to adequately train CITY and COUNTY law enforcement personnel, including the individual defendants herein, regarding warrantless searches and seizures, the use of force including deadly force, and obtaining emergency services for detained persons who face known and serious medical needs or safety risks;

  (e) By having and maintaining an unconstitutional custom and practice of conducting unreasonable warrantless searches and seizures, deploying SWAT under unjustified circumstances, using excessive force including deadly force and particularly tear gas and hand grenades, failing to obtain emergency services for detained persons including mentally ill individuals who face known and serious medical needs or safety risks, concealing evidence of misconduct, and fabricating evidence during investigations of misconduct.  The customs and practices of defendants were done with a deliberate indifference to individuals' safety and rights.

70. By reason of the aforementioned policies and practices of defendants, decedent was severely injured and subjected to pain and suffering and lost his life.

71. Defendants, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above.  Despite having knowledge as stated above these defendants condoned, tolerated and through actions and

inactions thereby ratified such policies. Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of decedent, Plaintiff, and other individuals similarly situated.

72. By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, defendants acted with an intentional, reckless, and callous disregard for the life of decedent and decedent's and Plaintiff's constitutional as well as human rights. Defendants and each of their actions were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

73. Furthermore, the policies, practices, and customs implemented and maintained and still tolerated by defendants were affirmatively linked to and were a significantly influential force behind the injuries of decedent and Plaintiff.

74. By reason of the aforementioned acts and omissions of defendants, Plaintiff was caused to incur funeral and related burial expenses, and loss of financial support.

75. By reason of the aforementioned acts and omissions of defendants, Plaintiff has suffered loss of love, affection, consortium and future support.

76. Accordingly, defendants each are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

77. Plaintiff seeks both wrongful death and survival damages under this claim.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests entry of judgment in her favor and against defendants, and each of them, as follows:

1  A. For compensatory damages, including both survival damages and wrongful death damages under federal law, in an amount to be proven at trial;
2  B. For funeral and burial expenses, and loss of financial support, in an amount to be proven at trial;
3  C. For punitive damages against the individual defendants in an amount to be proven at trial;
4  D. For interest;
5  E. For reasonable costs of this suit and attorneys' fees; and
6  F. For such further other relief as the Court may deem just, proper, and appropriate.

DATED: September 23, 2009    LAW OFFICES OF DALE K. GALIPO

By_____/s/ Dale K. Galipo_____
Dale K. Galipo
Attorneys for Plaintiff

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

DATED: September 23, 2009    LAW OFFICES OF DALE K. GALIPO

By_____/s/ Dale K. Galipo_____
Dale K. Galipo
Attorneys for Plaintiff